1   ELLIOT R. PETERS, Bar No. 158708
    epeters@keker.com
2   R. JAMES SLAUGHTER, Bar No. 192813
    rslaughter@keker.com
3   KHARI J. TILLERY, Bar. No. 215669
    ktillery@keker.com
4   **KEKER, VAN NEST & PETERS LLP**
    633 Battery Street
5   San Francisco, CA  94111-1809
    Telephone:  (415) 391-5400
6   Facsimile:  (415) 397-7188

7   JONATHAN M. MOSES (admitted *pro hac vice*)
    jmmoses@wlrk.com
8   ADAM L. GOODMAN (admitted *pro hac vice*)
    algoodman@wlrk.com
9   **WACHTELL, LIPTON, ROSEN & KATZ**
    51 West 52nd Street
10  New York, NY  10019
    Telephone:  (212) 403-1000
11  Facsimile:  (212) 403-2000

12  *Attorneys for Defendant*
    *Black Knight, Inc.*
13

14                  **UNITED STATES DISTRICT COURT**

15                 **NORTHERN DISTRICT OF CALIFORNIA**

16                    **SAN FRANCISCO DIVISION**

17

18  FEDERAL TRADE COMMISSION,              Case No.:  3:23-cv-01710-AMO

19              Plaintiff,                 **DEFENDANT BLACK KNIGHT,**
                                           **INC.'S ANSWER, AFFIRMATIVE**
20       v.                                **DEFENSES, AND COUNTERCLAIMS**

21  INTERCONTINENTAL EXCHANGE, INC.
    and BLACK KNIGHT, INC.,
22
                Defendants.
23

24

25

26

27

28

Defendant Black Knight, Inc. ("Black Knight"), by and through its undersigned counsel, hereby answers Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") Complaint for a Temporary Restraining Order and Preliminary Injunction Pursuant to Section 13(b) of the Federal Trade Commission Act dated April 10, 2023 (the "Complaint") as follows:

**INTRODUCTION**

Intercontinental Exchange, Inc. ("Intercontinental Exchange") and Black Knight are financial technology companies whose products and services help banks and other lenders make the process of issuing mortgages more efficient and thus less expensive ultimately for homeowners. On May 4, 2022, Intercontinental Exchange and Black Knight signed a merger agreement, whereby Intercontinental Exchange agreed to acquire one hundred percent of Black Knight in a merger that will make the process of issuing and servicing mortgages even more efficient and thus less expensive for potential homeowners, in particular those buying lower-cost homes.

Through this action, the FTC is seeking to challenge a version of the merger that will never be. The majority of the Complaint alleges anticompetitive harm that could arise if Intercontinental Exchange were to acquire Black Knight's Empower loan origination system ("LOS"). The Complaint ignores Black Knight's and Intercontinental Exchange's binding agreement to divest Black Knight's Empower LOS and other products to Constellation Web Solutions, Inc., a subsidiary of Constellation Software, Inc. (collectively, "Constellation"). Constellation is a large, sophisticated public company with deep experience in the mortgage technology business, and the divestiture provides Constellation everything it needs to compete for the provision of LOS services. Rather than engage with and consider the divestiture, the FTC rushed to file an administrative complaint in the FTC's administrative court in March 2023 that failed to account for the divestiture's effect. And, despite delaying the filing of this latest Complaint by a month, the FTC yet again fails to account for the divestiture's effect. As will be shown in this proceeding, this divestiture preserves—if not enhances—competition in the LOS space.

Even without the divestiture, the proposed transaction (the "Transaction") would have no

1   substantial anticompetitive effect on an industry that is characterized by dynamic competition and

2   an influx of new entrants.  Numerous LOS providers compete to win business from lenders of all

3   sizes and will continue to do so post-Transaction.  And when properly accounting for the

4   divestiture, Intercontinental Exchange's proposed acquisition of Black Knight *certainly* does not

5   violate the antitrust laws.  Constellation is a public company with a market capitalization of

6   $41 billion, over three times *larger* than Black Knight, that is in the business of acquiring,

7   managing, and growing vertical market software businesses.  Constellation has successfully

8   deployed this strategy with numerous software businesses, including other businesses in the

9   mortgage technology space.  In addition, the agreement between Intercontinental Exchange,

10  Black Knight, and Constellation provides Constellation access to sell Black Knight's Optimal

11  Blue pricing product and other services on highly favorable commercial terms for Constellation.

12          Thus, from day one, Constellation will have everything it needs to compete aggressively

13  in the LOS space with a robust suite of services and is eager to do so.  And Constellation's

14  experience and proven track record in mortgage technology ensures that Constellation is well-

15  positioned to not only maintain, but improve upon, Empower's competitive performance in the

16  LOS space.  The FTC and the Court must consider this procompetitive LOS divestiture when

17  assessing the likely competitive effects of the Transaction.  *See, e.g.*, *United States* v.

18  *UnitedHealth Group Inc.*, No. 1:22-cv-0481, 2022 WL 4365867, at *11 (D.D.C. Sept. 21, 2022).

19          The FTC's remaining allegations with respect to product pricing and eligibility engines

20  ("PPEs")—software that streamlines the calculation of mortgage pricing options and allows

21  lenders to offer the best pricing options possible—are based on a fundamental misunderstanding

22  of the competitive dynamics for such product and pricing tools.  Intercontinental Exchange's

23  native Encompass Product and Pricing Service product ("EPPS") and Black Knight's Optimal

24  Blue pricing product are not close substitutes and do not competitively constrain one another.

25  Nearly all LOS providers, including Intercontinental Exchange, provide some basic, embedded

26  product and pricing capabilities within their LOSs.  Intercontinental Exchange's EPPS product

27  exists in this category—it is embedded in Intercontinental Exchange's Encompass LOS, cannot

28  be used with any other LOS, and is offered free or as an inexpensive add-on to Encompass.

Separately, numerous third-party commercial PPE providers, including Black Knight's Optimal Blue, offer standalone systems with enhanced automation and PPE capabilities that can be used with any LOS.  These third-party PPE solutions provide lenders with their choice of standalone systems to integrate with their LOS and offer robust and wide-ranging functionality and services that cannot be achieved through the basic embedded pricing tools.  It is the difference between a bicycle and a sports car.  The products therefore cater to different customer segments who pay vastly different prices.  Nothing about the Transaction will reduce competition for PPE solutions.

Because of the merger's outside termination date of November 4, 2023, and the FTC's admitted inability to fully resolve its administrative proceedings prior to date, the fate of the parties' $11.7 billion transaction sits in this Court's hands.  As reflected in Defendants' request for an expedited case management conference (Dkt. 23), Defendants have a proposed a schedule for these proceedings that would allow the parties to complete expedited discovery and present this matter to the Court for its consideration promptly and well in advance of the merger's termination date.  Breaking with long-standing practice, the FTC has proposed proceeding first with the administrative proceeding (which the FTC has conceded cannot be decided before the merger's termination date) and then only presenting the paper record of that proceeding for this Court's review.  While the FTC is seeking to delay and limit this Court's independent review of its motion for a preliminary injunction and time the transaction out, Intercontinental Exchange's proposed acquisition of Black Knight, considered together with the divestiture of Black Knight's Empower LOS to Constellation, is a procompetitive transaction that violates no antitrust law.  The FTC's Complaint should be dismissed and the relief it seeks denied.

## ANSWER

All allegations not expressly admitted herein are denied.  Though included herein for reference, Black Knight does not interpret the headings and subheadings throughout the Complaint as well-pleaded allegations to which any response is required.  To the extent such a response is required, Black Knight denies all allegations in the headings and subheadings of the Complaint.  Use of certain terms or phrases defined in the Complaint is not an acknowledgment or admission of any characterization the FTC may ascribe to the defined terms.  Unless otherwise

defined, capitalized terms shall refer to the capitalized terms defined in the Complaint, but any such use is not an acknowledgment or admission of any characterization the FTC may ascribe to the capitalized terms.

Black Knight does not concede the truthfulness of third-party sources quoted or referenced in the Complaint. To the extent a response is required, Black Knight denies all allegations of the third-party sources quoted in or referenced in the Complaint. Unless expressly acknowledged below, Black Knight further does not concede the accuracy or completeness of alleged quotations from Black Knight employees, which are provided without the appropriate context or proffered in part to assert truth in a manner that may not be consistent with the declarant's intent. Black Knight reserves the right to amend and/or supplement this answer at a later stage of the proceedings. Each paragraph below corresponds to the same-numbered paragraph in the Complaint.

## NATURE OF THE CASE

1. Paragraph 1 asserts general background allegations that do not relate to Black Knight, to which no response is required. To the extent a response is required, Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1, which purport to characterize homebuyers generally, and denies those allegations on that basis.

2. Paragraph 2 asserts general background allegations that do not relate to Black Knight, to which no response is required. To the extent a response is required, Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2, which purport to characterize all lenders generally, and denies those allegations on that basis.

3. Paragraph 3 asserts general background allegations that do not relate to Black Knight, to which no response is required. To the extent a response is required, Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3, which purport to characterize all lenders and LOSs generally, and denies those allegations on that basis.

4.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in the first sentence of Paragraph 4 and denies those allegations on that basis.  Black Knight admits that it provides the Empower LOS product and that Empower LOS operates in the United States, but otherwise denies the remaining allegations contained in the second sentence of Paragraph 4.

5.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 5 and denies those allegations on that basis.  The second sentence of Paragraph 5 purports to characterize the contents of a statement by Black Knight's CFO, and Black Knight respectfully refers the Court to that statement for a complete and accurate recitation of its contents.  To the extent the allegations set forth in the second sentence of Paragraph 5 are inconsistent with the statement, Black Knight denies the allegations.  Paragraph 5 otherwise asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the remaining allegations contained in Paragraph 5.

6.     Paragraph 6 asserts general background allegations that do not relate to Black Knight, to which no response is required.  To the extent a response is required, Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6, which purport to characterize all LOS providers and LOSs generally, and denies those allegations on that basis.  In addition, Black Knight lacks sufficient knowledge or information regarding the Complaint's use of the vague term "ancillary services" and denies any allegations relating thereto.[1]  By way of further response, Black Knight avers that it offers services used to process, underwrite, fund, and close a loan.

7.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 7 and denies the allegations on that basis.  Black Knight denies the remaining allegations contained in

---

[1] Black Knight lacks sufficient knowledge or information regarding the term "ancillary services," as vaguely defined in the Complaint as "tens to hundreds of services" that are "touche[d] on" as a "mortgage moves from application to close," and denies each and every allegation in which that term appears in the Complaint on that basis.

Paragraph 7, except to admit that Black Knight owns Optimal Blue.

8.      Black Knight denies the allegations contained in Paragraph 8.

9.      Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 and denies the allegations on that basis.

10.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and denies the allegations on that basis.

11.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in the second sentence of Paragraph 11 and denies those allegations on that basis.  In addition, Paragraph 11 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 11.

12.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 12 and denies those allegations on that basis.  Black Knight denies the remaining allegations contained in Paragraph 12.

13.     Black Knight denies the allegations contained in Paragraph 13.

14.     Black Knight denies the allegations contained in Paragraph 14.

15.     Paragraph 15 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 15.

16.     Paragraph 16 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 16.

17.     Paragraph 17 asserts general background allegations to which no response is required.  To the extent a response is required, Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 17, which purports to characterize the FTC's actions.  Black Knight avers by way of further response that the Commission voted out an administrative Complaint on March 9, 2023, by a 4-0 vote, that alleged that the Acquisition would substantially lessen competition in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 5 of the FTC Act, 15 U.S.C. § 45.

The remaining allegations purport to characterize the Scheduling Order entered by the Administrative Law Judge on March 29, 2023, the FTC's administrative Complaint, and the FTC's Rules of Practice, and Black Knight respectfully refers the Court to those documents for a complete and accurate statement of their contents.  To the extent the remaining allegations are inconsistent with those documents, Black Knight denies the allegations.

18.     Paragraph 18 assert legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the remaining allegations contained in Paragraph 18.

19.     Paragraph 19 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 19.

## JURISDICTIONAL STATEMENT

### A.     Jurisdiction

20.     Paragraph 20 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 20.

21.     Paragraph 21 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 21.

22.     Paragraph 22 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 22.

### B.     Venue

23.     Paragraph 23 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 23.

### C.     Intradistrict Assignment

24.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 24 and denies the allegations on that basis.  Paragraph 24 otherwise asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 24.

## THE PARTIES AND THE PROPOSED ACQUISITION

25.     Paragraph 25 asserts legal conclusions to which no response is required.

26.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and denies the allegations on that basis.

27.     Black Knight admits the allegations contained in the first sentence of Paragraph 27.  Black Knight denies the remaining allegations contained in Paragraph 27, except to admit that Black Knight provides software, data, and analytics in connection with mortgage origination, that Black Knight offers Empower and MSP, that Black Knight acquired Compass Analytics in 2019, and that Black Knight acquired Optimal Blue in 2020.  By way of further response, Black Knight avers that it also provides software, data, and analytics for home equity lending and servicing.

28.     Black Knight admits the allegations contained in Paragraph 28.  Black Knight avers by way of further response that the purchase price for the Transaction has been reduced to approximately $11.7 billion.

29.     Black Knight admits only that Black Knight and Intercontinental Exchange advised the FTC that they would seek to close the Transaction immediately following a vote of Black Knight's shareholders scheduled for April 28, 2023, in the event the FTC did not seek a preliminary injunction.  The remaining allegations assert legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the remaining allegations contained in Paragraph 29.

## RESIDENTIAL MORTGAGE ORIGINATION

30.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30, which purport to characterize homebuyers and mortgage lending institutions generally, and denies the allegations on that basis.  Black Knight avers by way of further response that many homebuyers rely on a mortgage to finance the purchase of a home.

31.     Paragraph 31 asserts general background allegations that do not relate to Black Knight, to which no response is required.  To the extent a response is required, Black Knight

lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31, which purport to describe all LOSs generally, and denies those allegations on that basis.  By way of further response, Black Knight avers that LOS technology is used by mortgage lenders to originate home mortgages and to automate residential loan manufacturing.

32.     Paragraph 32 asserts general background allegations that do not relate to Black Knight, to which no response is required.  To the extent a response is required, Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32, which purport to describe all LOSs and lenders generally, and denies those allegations on that basis.

33.     Black Knight denies the allegations contained in the third sentence of Paragraph 33.  Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 33, which purport to characterize all proprietary LOSs and lenders generally, and denies those allegations on that basis.

34.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34, which purport to characterize ancillary services (which the Complaint has defined only vaguely), all LOS providers that offer ancillary services, and lenders generally, and denies the allegations on that basis.

35.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35, which purport to characterize all PPEs generally, and denies the allegations on that basis.

36.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 36, which purport to characterize all lenders, LOSs, and PPEs generally, and denies the allegations on that basis.

## THE RELEVANT ANTITRUST MARKETS

37.     Paragraph 37 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 37.

1

### A.    The Commercial LOS Market

2      38.    Paragraph 38 asserts legal conclusions to which no response is required.  To the

3  extent a response is required, Black Knight denies the allegations contained in Paragraph 38.

4      39.    The first sentence of Paragraph 39 asserts legal conclusions to which no response

5  is required.  To the extent a response is required, Black Knight denies the allegations contained in

6  the first sentence of Paragraph 39.  With respect to the remaining allegations contained in

7  Paragraph 39, which purport to characterize all lenders, commercial LOSs, and vendors of

8  commercial LOSs generally, Black Knight lacks knowledge or information sufficient to form a

9  belief as to the truth of the allegations and denies the allegations on that basis.

10      40.    Paragraph 40 asserts legal conclusions to which no response is required.  To the

11  extent a response is required, Black Knight denies the allegations contained in Paragraph 40.

12      41.    The second sentence of Paragraph 41 purports to characterize the contents of

13  Black Knight's Form 10-K for the fiscal year ended December 31, 2021, and Black Knight

14  respectfully refers the Court to that Form 10-K for a complete and accurate statement of its

15  contents.  To the extent the allegations set forth in the second sentence of Paragraph 41 are

16  inconsistent with the Form 10-K, Black Knight denies the allegations.  Black Knight lacks

17  knowledge or information sufficient to form a belief as to the truth of the remaining allegations

18  contained in Paragraph 41 and denies the allegations on that basis.

19      42.    The first sentence of Paragraph 42 asserts legal conclusions to which no response

20  is required.  To the extent a response is required, Black Knight denies the allegations contained in

21  the first sentence of Paragraph 42.  The second sentence of Paragraph 42 purports to characterize

22  the contents of a document prepared by Black Knight in preparation for an earnings call, and

23  Black Knight respectfully refers the Court to that document for a complete and accurate statement

24  of its contents.  To the extent the allegations set forth in the second sentence of Paragraph 42 are

25  inconsistent with that document, Black Knight denies the allegations.

26      43.    Paragraph 43 asserts legal conclusions to which no response is required.  To the

27  extent a response is required, Black Knight denies the allegations contained in Paragraph 43.

28      44.    Black Knight lacks knowledge or information sufficient to form a belief as to the

truth of the allegations contained in Paragraph 44, as they assert general background information that does not relate to Black Knight, and denies the allegations on that basis.

45.     Black Knight denies the allegations contained in Paragraph 45.

46.     Paragraph 46 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 46.

47.     Black Knight denies the allegations contained in Paragraph 47.

**B.     The LOS Market**

48.     Paragraph 48 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 48.

49.     The first sentence of Paragraph 49 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in the first sentence of Paragraph 49.  Black Knight otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 49, as they contain general background information concerning all LOSs and mortgage lenders generally and do not relate to Black Knight, and denies those allegations on that basis.

50.     The first sentence of Paragraph 50 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in the first sentence of Paragraph 50.  Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 50, as they contain general background information concerning all LOSs and mortgage lenders generally and do not relate to Black Knight, and denies those allegations on that basis.

51.     Paragraph 51 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 51.

52.     Paragraph 52 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 52.

53.     Paragraph 53 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 53.

54.     Paragraph 54 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 54.

**C.     The Market for PPEs for Users of Encompass**

55.     Paragraph 55 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 55.

56.     The first sentence of Paragraph 56 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in the first sentence of Paragraph 56.  Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 56, which purport to characterize PPEs generally, and denies the allegations on that basis.

57.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 and denies the allegations on that basis.

58.     Paragraph 58 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 58.

59.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 and denies the allegations on that basis.

60.     Paragraph 60 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 60.

61.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61 and denies the allegations on that basis.

**D.     The PPE Market**

62.     Paragraph 62 asserts a legal conclusion to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 62.

63.     The first sentence of Paragraph 63 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in the first sentence of Paragraph 63.  Black Knight denies the allegations contained in the second and third sentences of Paragraph 63.  The final sentence of Paragraph 63 purports to characterize the contents of an analyst presentation, and Black Knight respectfully refers the Court to the

analyst presentation for a complete and accurate statement of its contents.  To the extent the allegations set forth in the final sentence of Paragraph 63 are inconsistent with the analyst presentation, Black Knight denies the allegations.

64.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64, which purport to characterize all PPEs generally, and denies the allegations on that basis, except to admit that Black Knight provides PPEs.

65.     Paragraph 65 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 65.

66.     Paragraph 66 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 66.

67.     Black Knight denies the allegations contained in Paragraph 67.

**E.     The Relevant Geographic Market Is the United States**

68.     Paragraph 68 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 68.

## MARKET CONCENTRATION AND THE ACQUISITION'S PRESUMPTIVE ILLEGALITY

69.     Paragraph 69 asserts a legal conclusion to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 69.

70.     Paragraph 70 purports to characterize the 2010 U.S. Department of Justice and Federal Trade Commission Horizontal Merger Guidelines (the "Merger Guidelines"), and Black Knight respectfully refers the Court to the Merger Guidelines for a complete and accurate statement of their contents.  To the extent the allegations set forth in Paragraph 70 are inconsistent with the Merger Guidelines, Black Knight denies the allegations.  Black Knight further denies that the Merger Guidelines are vested with the authority to determine the legality of any acquisition, including through the provision of a presumption of unlawfulness.

71.     The first sentence of Paragraph 71 purports to characterize the Home Mortgage Disclosure Act (the "HMDA"), and Black Knight respectfully refers the Court to the HMDA for a

complete and accurate statement of its contents.  To the extent the allegations set forth in the first sentence of Paragraph 71 are inconsistent with the HMDA, Black Knight denies the allegations. Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 71, which purport to characterize lenders and regulators generally, and denies the allegations on that basis.  Black Knight denies the remaining allegations contained in Paragraph 71.

72.     Paragraph 72 asserts a legal conclusion to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 72.

73.     Paragraph 73 asserts a legal conclusion to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 73.

74.     Paragraph 74 asserts a legal conclusion to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 74.

75.     Paragraph 75 asserts a legal conclusion to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 75.

## EVIDENCE OF REASONABLY PROBABLE ANTICOMPETITIVE EFFECTS

### A.     Anticompetitive Effects in LOS Markets

76.     Paragraph 76 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 76.

77.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 77 and denies the allegations on that basis.  Black Knight denies the remaining allegations contained in Paragraph 77.

78.     Black Knight denies the allegations contained in the first sentence of Paragraph 78. The second sentence of Paragraph 78 asserts legal conclusions to which no response is required. To the extent a response is required, Black Knight denies the allegations contained in the second sentence of Paragraph 78.

### i. ICE and Black Knight Are Each Other's Closest Head-to-Head Competitors

79. Black Knight denies the allegations contained in the first and penultimate sentences of Paragraph 79. The second sentence of Paragraph 79 purports to characterize the contents of certain statements made by Black Knight's current chairman during an event, and the third sentence of Paragraph 79 purports to characterize certain statements made by Black Knight's CFO made during a conference. Black Knight respectfully refers the Court to the transcripts from those events for a complete and accurate statement of their contents. To the extent the allegations set forth in the second and third sentences of Paragraph 79 are inconsistent with those transcripts, Black Knight denies the allegations. Black Knight otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 79 and denies the allegations on that basis.

80. Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 80 and denies the allegations on that basis.

81. Black Knight denies the allegations set forth in the first sentence of Paragraph 81. Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 81 and denies the allegations on that basis. The third sentence of Paragraph 81 purports to characterize a statement made in preparation for a 2021 Black Knight earnings call, and Black Knight respectfully refers the Court to that document for a complete and accurate statement of its contents. To the extent the allegations set forth in the third sentence of Paragraph 81 are inconsistent with that document, Black Knight denies the allegations.

82. Black Knight denies the allegations contained in Paragraph 82, except to admit that Black Knight attempts to track when mortgage lenders' existing LOS contracts may expire or are up for renewal.

83. Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 and denies the allegations on that basis.

84.     Paragraph 84 purports to characterize certain tracking data maintained by Black Knight, and Black Knight respectfully refers the Court to that data for a complete and accurate statement of their contents.  To the extent the allegations set forth in Paragraph 84 are inconsistent with the tracking data, Black Knight denies the allegations.

### ii.   There Is a Reasonable Probability That the Acquisition Will Eliminate LOS Price Competition Between ICE and Black Knight

85.     Black Knight denies the allegations contained in Paragraph 85.

86.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 86 and denies the allegations on that basis.  To the extent the allegations contained in Paragraph 86 purport to refer to or characterize certain documents, Black Knight respectfully directs the Court to those documents for a complete and accurate statement of their contents, and denies the allegations to the extent they are inconsistent with those documents.  Black Knight lacks knowledge or information sufficient to form a belief as to the remaining allegations, which are general in nature, and denies the allegations on that basis.

87.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 87 and denies those allegations on that basis.  Black Knight denies the remaining allegations contained in Paragraph 87.

### iii.   There Is a Reasonable Probability That the Acquisition Will Eliminate Competition for LOS Features and Integrations

88.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 88, as they purport to characterize ancillary services (which the Complaint has defined only vaguely) and lenders generally, and denies the allegations on that basis.

89.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 89 and denies the allegations on that basis.  Black Knight denies the remaining allegations contained in

1    Paragraph 89.

2        90.    Black Knight denies the allegations contained in the first sentence of Paragraph 90,

3    except to admit that Black Knight acquired Compass Analytics and Optimal Blue and integrated

4    their respective PPEs with Empower.  To the extent the allegations contained in the second

5    sentence of Paragraph 90 characterize certain documents, Black Knight respectfully directs the

6    Court to those documents for a complete and accurate statement of their contents, and denies the

7    allegations to the extent they are inconsistent with those documents.

8        91.    Black Knight lacks knowledge or information sufficient to form a belief as to the

9    truth of the allegations contained in Paragraph 91 and denies the allegations on that basis.

10        92.    Paragraph 92 asserts a legal conclusion to which no response is required.  To the

11    extent a response is required, Black Knight denies the allegations contained in Paragraph 92.

12        **B.    Anticompetitive Effects in PPE Markets**

13        93.    Paragraph 93 asserts legal conclusions to which no response is required.  To the

14    extent a response is required, Black Knight denies the allegations contained in Paragraph 93.

15        94.    Black Knight denies the allegations contained in Paragraph 94.

16        95.    Black Knight lacks knowledge or information sufficient to form a belief as to the

17    truth of the allegations contained in Paragraph 95 and denies the allegations on that basis.

18        96.    Black Knight denies that the result of the Acquisition will be to consolidate

19    ownership of the two leading PPEs in the United States.  Black Knight lacks knowledge or

20    information sufficient to form a belief as to the truth of the remaining allegations contained in

21    Paragraph 96 and denies the allegations on that basis.

22        **ii.   There Is a Reasonable Probability That the Acquisition Will Eliminate**

23        **Head-to-Head PPE Competition Between ICE and Black Knight**

24        97.    Paragraph 97 asserts legal conclusions to which no response is required.  To the

25    extent a response is required, Black Knight denies the allegations contained in the first and

26    second sentences of Paragraph 97, and otherwise lacks knowledge or information sufficient to

27    form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in

28    Paragraph 97 and denies the allegations on that basis.

98.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 98 and denies those allegations on that basis.  Black Knight denies the remaining allegations contained in Paragraph 98.  By way of further response, Black Knight avers that Empower has its own native PPE functionality, and that Black Knight acquired Compass Analytics and Optimal Blue and integrated their respective PPEs with Empower.

99.     Paragraph 99 asserts a legal conclusion to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 99, and avers by way of further response that Optimal Blue is widely used and integrated into LOSs owned by different providers.

100.     Black Knight denies the allegations contained in the first sentence of Paragraph 100.  Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 100 and denies the allegations on that basis.

101.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 101 and denies the allegations on that basis.

102.     Black Knight denies the allegations contained in Paragraph 102, except to admit that Black Knight acquired Compass Analytics in 2019.

103.     Black Knight denies the allegations contained in Paragraph 103, except to admit that Black Knight acquired Optimal Blue in 2020.

104.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of Paragraph 104 and denies the allegations on that basis.  The remaining allegations purport to refer to and characterize statements made by Optimal Blue's CEO in 2017, and Black Knight respectfully refers the Court to those statements for a complete and accurate recitation of their contents.  To the extent the remaining allegations set forth in Paragraph 104 are inconsistent with those statements, Black Knight denies the allegations.

105.     Black Knight lacks knowledge or information sufficient to form a belief as to the

truth of the allegations regarding Intercontinental Exchange contained in Paragraph 105 and denies those allegations on that basis. Black Knight denies the remaining allegations contained in Paragraph 105. To the extent Paragraph 105 purports to characterize statements made by Optimal Blue and Black Knight, Black Knight respectfully refers the Court to those statements for a complete and accurate recitation of their contents, and further denies the allegations to the extent they are inconsistent with those statements.

106. Black Knight denies the allegations contained in Paragraph 106, except to admit that Black Knight integrated Optimal Blue's PPE with Empower. To the extent Paragraph 106 purports to characterize statements made by Black Knight's CEO during an earnings call, Black Knight respectfully refers the Court to a transcript of that earnings call for a complete and accurate statement of its contents, and further denies the allegations to the extent they are inconsistent with that transcript.

107. Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 107 and denies the allegations on that basis.

108. Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 108 and denies the allegations on that basis.

109. Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 109 and denies the allegations on that basis.

110. Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 110 and denies the allegations on that basis.

111. Black Knight admits that on May 4, 2022, Intercontinental Exchange announced its agreement to acquire Black Knight. Black Knight otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 111 and denies the allegations on that basis.

112. Paragraph 112 asserts legal conclusions to which no response is required. To the extent a response is required, Black Knight denies the allegations contained in the first sentence of Paragraph 112, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 112 and denies the allegations on

that basis.

113.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 113 and denies the allegations on that basis.

> ### iii.  There Is a Reasonable Probability That the Acquisition Will Increase ICE's Ability and Incentive to Foreclose Competition from Other PPE Providers

114.     Paragraph 114 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 114.

> ### a.  ICE Can Disadvantage PPE Competitors by Degrading or Restricting LOS Integration

115.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 115, as they purport to characterize all mortgage lenders generally, and denies the allegations on that basis.

116.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116, as they purport to characterize all lenders, PPEs, and PPE providers generally, and denies the allegations on that basis.

117.     Black Knight denies the allegations contained in Paragraph 117.

118.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 118 and denies the allegations on that basis.

119.     Black Knight denies the allegations contained in Paragraph 119.  To the extent Paragraph 119 purports to characterize statements made by one of Black Knight's executives, Black Knight respectfully refers the Court to those statements for a complete and accurate recitation of their contents, and further denies the allegations to the extent they are inconsistent with those statements.

120.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 120 and denies the allegations on that basis.

121.     Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 121 and

DEFENDANT BLACK KNIGHT, INC.'S ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS

denies the allegations on that basis. To the extent Paragraph 121 purports to characterize the contents of unidentified documents, Black Knight respectfully refers the Court to those documents for a complete and accurate statement of their contents, and denies the allegations to the extent they are inconsistent with those documents.

122.   Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 122 and denies the allegations on that basis.

123.   Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 123 and denies the allegations on that basis.

### b. Post-Acquisition, ICE Will Have a Greater Incentive to Foreclose Competition for PPEs

124.   Paragraph 124 asserts a legal conclusion to which no response is required. To the extent a response is required, Black Knight denies the allegations contained in Paragraph 124.

125.   To the extent Paragraph 125 purports to characterize the contents of unidentified documents, Black Knight respectfully refers the Court to those documents for a complete and accurate statement of their contents, and denies the allegations to the extent they are inconsistent with those documents. Black Knight denies the remaining allegations contained in Paragraph 125.

126.   The first sentence of Paragraph 126 asserts legal conclusions to which no response is required. To the extent a response is required, Black Knight denies the allegations contained in the first sentence of Paragraph 126. Black Knight denies the remaining allegations contained in Paragraph 126.

127.   Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 127 and denies the allegations on that basis.

128.   Black Knight denies the allegations contained in Paragraph 128.

### C.   Anticompetitive Effects in Other Relevant Antitrust Markets for Ancillary Services

129.   Black Knight denies the allegations contained in Paragraph 129.

130.   Black Knight denies the allegations contained in Paragraph 130.

131.    Black Knight denies the allegations contained in Paragraph 131.

132.    Black Knight admits that it currently offers the Ernst fee service, but otherwise denies the allegations contained in the first sentence of Paragraph 132.  Black Knight denies the allegations contained in the third sentence of Paragraph 132.  Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 132, as they purport to characterize all fee services generally or relate to Intercontinental Exchange, and denies those allegations on that basis.

133.    Black Knight denies the allegations contained in the second sentence of Paragraph 133, except that Black Knight admits that it offers the Regulatory Assist regulatory compliance service and avers by way of further response that some lenders who use Black Knight's Empower use a third-party regulatory compliance service.  Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 133 and denies those allegations on that basis.

## LACK OF COUNTERVAILING FACTORS

134.    Paragraph 134 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 134.

135.    The last sentence of Paragraph 135 appears to characterize a submission made in the context of the FTC's investigation into the Transaction.  Black Knight respectfully refers the Court to that document for a complete and accurate statement of its contents and denies the allegations to the extent they are inconsistent with that document.  Paragraph 135 otherwise asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the remaining allegations contained in Paragraph 135.

136.    Black Knight denies the allegations contained in Paragraph 136, except that, to the extent the second sentence of Paragraph 136 purports to refer to or characterize a submission made in the context of the FTC's investigation into the Transaction, Black Knight respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies the allegations to the extent they are inconsistent with that document.  To the extent the fourth sentence of Paragraph 136 purports to characterize and quote a statement made by Black Knight's

DEFENDANT BLACK KNIGHT, INC.'S ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS

CFO during an investor conference, Black Knight respectfully refers the Court to the transcript from that conference for a complete and accurate statement of its contents, and denies the allegations to the extent they are inconsistent with that transcript.

137.   Black Knight denies the allegations contained in the first sentence of Paragraph 137.  Black Knight otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 137 and denies the allegations on that basis.

138.   The first sentence of Paragraph 138 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in the first sentence of Paragraph 138.  Black Knight denies the remaining allegations contained in Paragraph 138.

139.   The first sentence of Paragraph 139 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in the first sentence of Paragraph 139.  Black Knight denies the remaining allegations contained in Paragraph 139.

140.   The first sentence of Paragraph 140 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in the first sentence of Paragraph 140.  Black Knight otherwise denies the remaining allegations contained in Paragraph 140, except to admit that Black Knight owned Compass Analytics and a native PPE when it acquired Optimal Blue.  To the extent the allegations contained in Paragraph 140 purport to refer to or characterize a submission made in the context of the FTC's investigation into the Transaction, Black Knight respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies the allegations to the extent they are inconsistent with that document.  To the extent Paragraph 140 purports to characterize statements made by Black Knight's CEO during an earnings call, Black Knight respectfully refers the Court to the transcript of that earnings call for a complete and accurate statement of its contents, and denies the allegations to the extent they are inconsistent with those statements.

141.   Black Knight denies the allegations contained in Paragraph 141.

DEFENDANT BLACK KNIGHT, INC.'S ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS

142.   Black Knight lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Intercontinental Exchange contained in Paragraph 142 and denies those allegations on that basis.  To the extent Paragraph 142 purports to refer to or characterize certain documents, Black Knight respectfully refers the Court to those documents for a complete and accurate statement of their contents, and denies the allegations to the extent they are inconsistent with those documents.  Black Knight denies the remaining allegations contained in Paragraph 142.

143.   Paragraph 143 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 143.

**DEFENDANTS' PROPOSED REMEDY WILL NOT FIX
THE ACQUISITION'S ANTICOMPETITIVE EFFECTS**

144.   Black Knight denies the allegations contained in the first and last sentences of Paragraph 144 and avers by way of further response that Black Knight and Intercontinental Exchange have signed a definitive agreement to divest Empower to Constellation.  To the extent the remaining allegations contained in Paragraph 144 purport to characterize the Merger Agreement, as amended, Black Knight respectfully refers the Court to that document for a complete and accurate statement of its contents, and denies the allegations to the extent they are inconsistent with the Merger Agreement.

145.   Paragraph 145 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 145.

**LIKELIHOOD OF SUCCESS ON THE MERITS,
BALANCE OF EQUITIES, AND NEED FOR RELIEF**

146.   Paragraph 146 asserts legal conclusions to which no response is required.  To the extent a response is required, Black Knight denies the allegations contained in Paragraph 146.

147.   Black Knight denies the allegations contained in Paragraph 147.

148.   Black Knight denies the allegations contained in Paragraph 148.

149.   Black Knight denies the first sentence of Paragraph 149.  The remainder of Paragraph 149 is a request for relief to which no response is required.  To the extent a response is

1 required, Black Knight denies that the FTC is entitled to the relief requested in Paragraph 149.

2 ## AFFIRMATIVE AND OTHER DEFENSES

3 Black Knight asserts the following defenses with respect to the causes of action alleged in

4 the Complaint, without assuming the burden of proof or persuasion where such burden rests on

5 the FTC.  Black Knight has not knowingly or intentionally waived any applicable defenses, and it

6 reserves the right to assert and rely upon other applicable defenses that may become available or

7 apparent throughout the course of the action.  Black Knight reserves the right to amend, or seek to

8 amend, its Answer, including its affirmative and other defenses.

9 ### FIRST DEFENSE
10 ### (Structure of Proceedings Violates Due Process)

11 The structure of the related administrative proceedings, in which the Commission both

12 initiates and finally adjudicates the Complaint against Black Knight, having prejudged the merits

13 of the action, violates Black Knight's Fifth Amendment Due Process right to adjudication before

14 a neutral arbiter.

15 ### SECOND DEFENSE
16 ### (Commission's Procedures Violate Due Process)

17 The Commission's procedures violate Black Knight's right to procedural due process

18 under the Due Process Clause of the Fifth Amendment.

19 ### THIRD DEFENSE
20 ### (Commission's Procedures Violate Equal Protection Clause)

21 The Commission's procedures arbitrarily subject Black Knight to administrative

22 proceedings rather than to proceedings before an Article III judge in violation of Black Knight's

23 right to Equal Protection under the Fifth Amendment.

24 ### FOURTH DEFENSE
25 ### (Constraints on Removal Violate Article II of the Constitution)

26 The related administrative proceedings are invalid because the constraints on removal of

27 the Commissioners and the Administrative Law Judge violate Article II of the Constitution and

28 the separation of powers.

**FIFTH DEFENSE**
**(Delegation of Legislative Power Unconstitutional)**

The related administrative proceedings are invalid because Congress unconstitutionally delegated legislative power to the Commission by failing to provide an intelligible principle by which the Commission would exercise the delegated power.

**SIXTH DEFENSE**
**(Violation of Fifth Amendment)**

Granting the relief sought would constitute a taking of Black Knight's property in violation of the Fifth Amendment to the Constitution.

**SEVENTH DEFENSE**
**(Violation of Seventh Amendment)**

The adjudication of the Complaint against Black Knight through the related administrative proceedings violates Black Knight's Seventh Amendment right to a jury trial.

**EIGHTH DEFENSE**
**(Violation of Article III of the U.S. Constitution)**

The adjudication of the Complaint against Black Knight through the related administrative proceedings adjudicates private rights and therefore violates Article III of the U.S. Constitution and the Seventh Amendment.

**NINTH DEFENSE**
**(Failure to State a Claim)**

The Complaint fails to state a claim upon which relief can be granted, including, but not limited to, on the basis that: (1) new entrants to the relevant market were (and are) timely, likely, and sufficient to offset any alleged anticompetitive effects of the Transaction; (2) the alleged market definitions fail as a matter of both fact and law; (3) the Complaint fails to allege any plausible harm to competition, consumers, or consumer welfare; (4) the Complaint fails to allege undue share in any plausibly defined relevant market; and (5) any alleged harm to potential competition is not actionable.

**TENTH DEFENSE**
**(No Antitrust Injury)**

The Complaint fails to establish actual, cognizable antitrust injury of the type antitrust laws are intended to remedy.

**ELEVENTH DEFENSE**
**(Transaction Is Not Unlawful)**

The Transaction does not violate the antitrust laws because:  (1) the Transaction is procompetitive and will result in merger-specific efficiencies, cost synergies, product-quality improvements, and other procompetitive effects that benefit consumers. The benefits outweigh any alleged anticompetitive effects; (2) the combination of Defendants' businesses is not likely to substantially lessen competition under the analytical framework set forth in the Merger Guidelines promulgated by the FTC and Department of Justice; and (3) Intercontinental Exchange and Black Knight's agreement with Constellation to divest Empower as well as certain other products to Constellation would address any purported anticompetitive effects alleged in the Complaint and, consistent with Section 7 of the Clayton Act, 15 U.S.C. § 18, and the decision in *United States* v. *UnitedHealth Grp. Inc.*, No. 1:22-cv-0481, 2022 WL 4365867, at *9 (D.D.C. Sept. 21, 2022), it is inappropriate to consider the transaction in the absence of the divestiture.

**TWELFTH DEFENSE**
**(Public Interest)**

Neither the filing of this Complaint nor the contemplated relief is in the public interest, pursuant to 15 U.S.C. § 45.

**THIRTEENTH DEFENSE**
**(Failure to State a Claim)**

The Complaint fails to state a claim against Black Knight because Section 7 of the Clayton Act, 15. U.S.C. § 18, applies only to acquirers in a transaction and cannot give rise to liability against sellers.

## **COUNTERCLAIMS**

Defendant Black Knight, Inc. ("Black Knight"), by and through its undersigned attorneys, seeks the following counterclaims against Plaintiff Federal Trade Commission ("Plaintiff" or "FTC").

### **NATURE OF THE ACTION**

1.     Black Knight challenges the unconstitutional structure and processes employed by the FTC to prohibit lawful acquisitions.  The FTC possesses the power not only to prosecute cases, but to judge them as well.  Yet the FTC's Administrative Law Judges ("ALJs") exercise near-total protection from political accountability because they are subject to neither democratic election nor at-will removal by the President.  Instead they have "dual layers" of removal protection because they are only removable by Commissioners "for cause," who, in turn, are only removable by the President "for cause."

2.     In the related proceeding instituted against Black Knight, the FTC not only has charged and prosecuted the case but has also appointed an ALJ.  And if the FTC disagrees with the ALJ's ultimate decision on either the facts or the law, the same Commissioners who voted to file the enforcement action against Black Knight have the right under the FTC's self-serving rules to review these findings de novo and change them.  A former FTC Commissioner has described this procedure as an "unhealthy and biased institutional process" that virtually guarantees the agency's result will stand.  *See* Joshua D. Wright, Section 5 Revisited: Time for the FTC to Define the Scope of Its Unfair Methods of Competition Authority at 6 (2015).

3.     This process also involves the adjudication of private rights, particularly, the parties' ability to engage in a private commercial transaction and the risk that the parties will have to pay a fine to the FTC.  Such an adjudication is the exclusive province of Article III courts, where the parties may also be able to assert their Seventh Amendment right to a trial by jury.

4.      This Court should declare the FTC's structure and procedures unconstitutional. And it should enjoin the FTC from subjecting Black Knight to its unfair and unconstitutional internal forum, adjudicating the legality of Intercontinental Exchange's acquisition of Black Knight in this Article III court instead.

**THE PARTIES**

5.      Counterclaim Defendant FTC is an administrative agency of the United States Government, established, organized, and existing pursuant to the FTC Act, 15 U.S.C. § 45, and is authorized under certain circumstances by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to initiate court proceedings to enjoin ongoing or imminent violations of any law the FTC enforces.

6.      Counterclaim Plaintiff Black Knight is a publicly traded corporation incorporated in Delaware, with its headquarters in Jacksonville, Florida.  Black Knight provides integrated, high-performance software solutions, data, and analytics to the U.S. mortgage and real estate markets.

**JURISDICTION AND VENUE**

7.      This action arises under the Constitution and laws of the United States, and this Court has federal question jurisdiction over this action pursuant to Article III of the Constitution and 28 U.S.C. § 1331.

8.      Counterclaim Plaintiff's right to immediate judicial review in this Court with respect to Counterclaim Defendants' alleged conduct is based on the Due Process Clause of the Fifth Amendment, Article III of the Constitution, the Seventh Amendment, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

9.      Venue is proper under 5 U.S.C. § 703 and 28 U.S.C. §§ 1391(b), (c), and (e).

**FACTUAL BACKGROUND**

A.      **The Constitutional Infirmities Associated with the Government Merger Review Process**

10.      Both the FTC and the Department of Justice ("DOJ") review mergers and acquisitions that may present substantive antitrust concerns.  Section 7 of the Clayton Act, codified at 15 U.S.C. § 18, prohibits mergers and acquisitions where the "effect . . . may be substantially to lessen competition" or "tend to create a monopoly."  As relevant here, the FTC's authority is based on Section 13(b) of the FTC Act.

11.      The government employs an impermissibly arbitrary approach to deciding whether the FTC or DOJ will lead a given investigation, despite the consequences that decision carries for

regulated parties.  DOJ-led proceedings occur in federal court.  By contrast, the FTC may pursue proceedings before itself, where an ALJ presides over a hearing lacking the stringent evidentiary and procedural rules of federal court, *see* 16 C.F.R. §§ 3.21-.43.  Further, federal courts may apply different standards of review depending on where the case originated.  *Compare* Fed. R. Civ. P. 52(a)(6), *with* 15 U.S.C. §§ 21(c), 45(c).

12.     The FTC's and DOJ's process lacks standards and does not provide citizens with necessary Due Process safeguards.  *See Beckles* v. *United States*, 137 S. Ct. 886, 892 (2017) (government cannot deprive property under law "so standardless that it invites arbitrary enforcement"); *Fuentes* v. *Shevin*, 407 U.S. 67, 80 (1972).  The arbitrary manner in which the FTC and DOJ determine parties' procedural rights also violates Equal Protection, *cf. Williams* v. *Vermont*, 472 U.S. 14, 22-23 (1985) ("arbitrary distinction" among taxpayers violates equal protection), and impermissibly delegates to the agencies legislative powers that belong exclusively to Congress, *cf. Jarkesy* v. *SEC*, 34 F.4th 446, 459 (5th Cir. 2022) (SEC's ability to assign matters to agency adjudication without intelligible principle violates the nondelegation doctrine.  The FTC's discretion to sue in federal court or its own tribunal (or both), afforded it by Congress without the requisite intelligible principle to guide its exercise, likewise violates the nondelegation doctrine.  *Mistretta* v. *United States*, 488 U.S. 361, 372 (1989) (Congress can delegate its Article I legislative powers to another entity only if it provides an "intelligible" principle by which to exercise that power); *Crowell* v. *Benson*, 285 U.S. 22, 50 (1932) ("[T]he mode of determining" which cases are assigned to administrative tribunals is "completely within congressional control."); *Jarkesy*, 34 F.4th at 462 (providing the SEC with broad "power to decide which defendants should receive *certain legal processes* (those accompanying Article III proceedings)" violated the nondelegation doctrine).

13.     Moreover, the FTC's internal administrative hearing provides none of the substantive or procedural protections enjoyed by litigants in federal district court.  These proceedings are, instead, fraught with Due Process and Equal Protection deficiencies.

- Federal district court judges are Article III impartial fact-finders who owe no allegiances to the agency.  In contrast, any FTC Commissioner (including

those who voted to sue Intercontinental Exchange and Black Knight) is permitted to preside over the administrative hearing; and an ALJ appointed and compensated by the FTC will preside.

- Federal court proceedings are governed by the Federal Rules of Evidence and Federal Rules of Civil Procedure.  Neither apply in FTC administrative proceedings.

- Litigants in federal court can appeal adverse decisions to impartial circuit court judges.  Decisions rendered in FTC administrative proceedings must first be appealed to the same FTC Commissioners who voted to sue the defendant at the outset, raising inherent concerns about proper review and opening the potential for bias to reach an end result.

- The FTC Commissioners, on appeal, can ignore and completely change the merits decision rendered in the administrative proceedings before the defendant appeals to the circuit court.  *See, e.g.*, Opinion of the Commission, *In the Matter of Illumina, Inc., a corporation, and GRAIL, Inc., a corporation*, Docket No. 9401 (April 3, 2023) (opinion of the FTC reversing ALJ's finding that Complaint Counsel failed to prove that a substantial lessening of competition was probable or imminent).

- Different appellate standards of review may apply depending on where the case originated.  On appeal from agency proceedings, "[t]he findings of the Commission as to the facts, if supported by evidence, shall be conclusive." 15 U.S.C. § 45(c).

14.    The nature of administrative hearings at the FTC and the limited review of its factual findings on appeal means the results can be preordained.  As one court noted, the "FTC has not lost a single case [in administrative proceedings] in the past quarter-century.  Even the 1972 Miami Dolphins would envy that type of record." *Axon Enter., Inc.* v. *FTC*, 986 F.3d 1173, 1187 (9th Cir. 2021), *cert. granted in part*, 142 S. Ct. 895 (2022), *and rev'd and remanded*, No.

21-1239, 2023 WL 2938328 (U.S. Apr. 14, 2023).[2]

15.     This kind of discretionary hearing process is exactly what Article III, the Equal Protection Clause, the Due Process Clause, the nondelegation doctrine, and the Seventh Amendment were designed to prevent.  As the Supreme Court has emphasized, the irreducible minimum of Due Process is "notice of the factual basis" of the Government's assertions "and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." *Hamdi* v. *Rumsfeld*, 542 U.S. 507, 533 (2004).  Indeed, "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right . . .  an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Id*. (quoting *Baldwin* v. *Hale*, 1 Wall. 223, 233 (1864)) (internal quotation marks omitted).  And a "meaningful" hearing, for purposes of Due Process, "requires a neutral and detached judge." *Id.* (quoting *Concrete Pipe & Prods. of Cal., Inc.* v. *Construction Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 617 (1993)) (internal quotation marks omitted).  "These essential constitutional promises may not be eroded." *Id*.  And yet that basic protection—provided to everyone from public employees to enemy combatants—is denied to companies caught up in a merger challenge pursued by the FTC.

### B.      The FTC Lacks Political Accountability

16.     Article II "vested" all "executive Power" in the President, Art. II, § 1, cl. 1, and charged the President alone with "tak[ing] Care that the Laws be faithfully executed," Art. II, § 3.

17.      As the Supreme Court has explained, the Constitution concentrates executive power solely in the President because the Framers wanted to "ensure . . . accountability" in the Executive Branch.  *Printz* v. *United States,* 521 U.S. 898, 922 (1997).  They recognized that the President could not carry out all of his duties alone, and therefore, must be able to delegate some authority and responsibilities to others.  *See* Art. II, § 2, cl. 2 (discussing appointments of superior and inferior officers); *Myers* v. *United States*, 272 U.S. 52, 117 (1926) ("[T]he President alone and unaided could not execute the laws," and thus must "select those who [are] to act for him under his direction in the execution of the laws.").

---

[2] This representation by the Ninth Circuit Court of Appeals was made before ALJ Chappell's ruling in the *Illumina/Grail* matter referenced above.  In the most recent instance of the FTC losing a case in an administrative proceeding, the Commissioners voted to reverse the ALJ.

18.     While the President may delegate power, the President must ensure that "the buck stops" with him or her. *Free Enter. Fund* v. *PCAOB*, 561 U.S. 477, 493 (2010). Accordingly, the Supreme Court has recognized that, "as a general matter," the President must have the "power to remove" principal officers "who assist him in carrying out his duties." *Id*. at 513-14. Indeed, if "any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws." *Id*. at 492 (quoting 1 Annals of Cong. 463 (1789) (Joseph 8 Gales ed., 1834) (Madison) (emphasis added)).

19.     Just as the President's ability to select administrative officers "is essential to the execution of the laws by him, so must be his power of removing" officers. *Myers*, 272 U.S. at 117. That removal power is important to the democratic legitimacy of the Executive Branch in at least two ways. First, it makes officers less likely to deviate from the President's (and hence, the People's) will. An officer who knows that disobedience can (and will) be met with removal is less likely to take an action at odds with the President's agenda. Second, and perhaps more importantly, the removal power gives the People political recourse if they are displeased with the actions taken by those who enforce federal law. Although the People cannot vote for (or against) an Executive officer directly, they can vote for (or against) the President, who bears ultimate responsibility for federal law enforcement. Those two mechanisms for accountability work together to ensure that the Government officials who carry out the work of the Executive Branch do so in a way that reflects the People's will, and not their own.

20.     FTC Commissioners, however, are shielded from at-will Presidential removal— and hence from the key mechanism of democratic accountability—in violation of Article II. The FTC is headed by five Commissioners, nominated by the President and confirmed by the Senate, each serving a seven-year term. 15 U.S.C. § 41. But once appointed, the Commissioners are not subject to removal by the President absent a finding of "inefficiency, neglect of duty, or malfeasance in office." *Id*. This means FTC Commissioners are not politically accountable for their actions.

21.     The ALJs that initially conduct administrative proceedings receive an additional layer of protection from Presidential removal. FTC-appointed ALJs can also only be removed for

DEFENDANT BLACK KNIGHT, INC.'S ANSWER, AFFIRMATIVE DEFENSES & COUNTERCLAIMS

"good cause" in accordance with statutory procedures. 5 U.S.C. §§ 7521(a), (b)(1).  This creates a dual layer of protection for these ALJs.  The Supreme Court has uniformly held that such dual-layered protection is unconstitutional.  *See Free Enter. Fund*, 561 U.S. at 495 (holding unconstitutional similar multi-layer tenure protection where Board members appointed by SEC could only be removed by those Commissioners, not the President, for cause); *Seila Law LLC* v. *CFPB*, 140 S. Ct. 2183, 2192 (2020) (finding that the removal restrictions on the director of the CFPB violated Article II of the Constitution).

22.     The result is that crucial law enforcement actions, sometimes with massive consequences for the American economy, are currently taken by individuals not elected by the People, and not controlled by the President.  That runs directly contrary to Article II and the democratic principles underlying the Constitution.

**C.      The FTC Adjudicates Private Rights with Limited Article III Judicial Review and No Trials by Jury**

23.     Article III provides that the judicial power of the United States is vested "in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Art. III, § 1.  "Consequently, Congress cannot confer the Government's 'judicial Power' on entities outside Article III."  *Oil States Energy Servs., LLC* v. *Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1372-73 (2018) (citing *Stern* v. *Marshall*, 564 U.S. 462, 484 (2011)).  Specifically, "Congress may not withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty."  *Stern*, 564 U.S. at 484 (internal quotation marks omitted).

24.     To determine if an entity is improperly exercising the "judicial power," courts distinguish between public and private rights, with private rights requiring adjudication by Article III courts.  *Id*. at 495.  Private rights were historically understood to include "rights to life, liberty, and property, . . . the three absolute rights . . . so called because they appertain and belong to particular men . . . merely as individuals, not to them as members of society or standing in various relations to each other—that is, not dependent upon the will of the government."  *Wellness Int'l Network, Ltd.* v. *Sharif*, 575 U.S. 665, 713-714 (2015) (Thomas, J., dissenting) (quoting 1 W.

Blackstone, Commentaries on the Laws of England 119 (1765)) (cleaned up).

25. As part of its administrative proceedings, the FTC determines the rights of parties to engage in private transactions. This directly regulates the right of parties to use their property and therefore their private rights as historically understood. Moreover, an FTC order in these administrative proceedings brings with it the possibility of future civil penalties. 15 U.S.C. § 45(l). Civil penalties require a party to surrender its property and so also implicate "private rights." *See Tull* v. *United States*, 481 U.S. 412, 422 (1987) ("A civil penalty was a type of remedy at common law that could only be enforced in courts of law.").

26. Although FTC actions are technically subject to judicial review, that review is limited. The FTC Act provides that "the findings of the Commission as to the facts, if supported by evidence, shall be conclusive" in federal court. 15 U.S.C. § 45(c). And review of these proceedings is typically restricted to "the court of appeals of the United States, within any circuit where the method of competition or the act or practice in question was used or where such person, partnership, or corporation resides or carries on business." *Id*.

27. The FTC review process also includes no right for a regulated defendant to receive a trial by a jury. The Seventh Amendment explicitly provides this right "in Suits at common law, where the value in controversy shall exceed twenty dollars." This includes actions "analogous to Suits at common law." *Tull*, 481 U.S. at 417 (internal quotation marks omitted).

28. The FTC's actions in its administrative proceedings that implicate the rights of parties to engage in private commercial transactions and create the possibility of civil penalties are analogous to actions at common law and so implicate parties' Seventh Amendment rights.

29. The combination of this limited judicial review and the substantial adjudication of private rights that occurs in the FTC's administrative process violates Article III of the Constitution because the FTC is wielding power that is in the exclusive domain of the federal courts. Additionally, the failure to provide parties to these proceedings with a right to a jury trial violates the Seventh Amendment.

**D.    The FTC's Administrative Proceeding Against Black Knight**

30.    On May 18, 2022, Counterclaim Plaintiff Black Knight and Intercontinental Exchange submitted Premerger Notification and Report Forms to the FTC's Premerger Notification Office and the Department of Justice's Antitrust Division.

31.    On June 17, 2022, the FTC issued a request for additional information and documentary materials ("Second Request") to both Counterclaim Plaintiff Black Knight and Intercontinental Exchange in connection with the proposed acquisition.

32.    On October 17, 2022, Counterclaim Plaintiff Black Knight and Intercontinental Exchange certified compliance with the Second Request.

33.    Counterclaim Plaintiff Black Knight and Intercontinental Exchange engaged in meaningful dialogue and negotiation with the FTC, both throughout the Second Request process and after certification, seeking to educate the FTC on market realities and the effects of the proposed acquisition.

34.    Despite confidence that the proposed acquisition would not lead to a substantial lessening of competition in the loan origination software ("LOS") market, in an effort to assuage concerns articulated by the FTC, Counterclaim Plaintiff Black Knight and Intercontinental Exchange agreed to divest Black Knight's LOS product, Empower, along with related assets, to Constellation Web Solutions, Inc.

35.    On March 9, 2023, and as a result of a vote the Commissioners, the FTC instituted the administrative proceedings against Intercontinental Exchange and Black Knight.

36.    That same day, the FTC commenced an administrative proceeding on the antitrust merits of the Acquisition before an Administrative Law Judge.  In this proceeding the FTC seeks to prevent Intercontinental Exchange and Black Knight from engaging in the Acquisition.  The trial on the merits trial scheduled to begin on July 12, 2023.  Once this trial is complete and an ALJ decision is rendered, any review of that decision will be by the Commissioners themselves—the same Commissioners who voted to institute proceedings.

37.    In a departure from longstanding practice, the FTC chose not to simultaneously file a complaint for a preliminary injunction in federal court.  Instead, the FTC waited until April

10, 2023, to file a complaint with this Court.

38.     The FTC's complaint in this action is in aid of the administrative proceedings.  It seeks to preliminarily enjoin the acquisition.

**COUNT I**

**(Violation of Black Knight's Constitutional Rights—Declaratory and Injunctive Relief)**

39.     Black Knight restates and incorporates by reference each and every allegation of the preceding paragraphs.

40.     The ongoing administrative proceeding, in which the FTC will act as prosecutor, judge, and jury violates several of Black Knight's constitutional rights.

41.     It violates Black Knight's Due Process rights by, among other things, arbitrarily subjecting Black Knight to the FTC's administrative processes and depriving Black Knight of the ability to make its case before a neutral arbiter.

42.     By arbitrarily subjecting Black Knight to unfair procedures before an administrative body, rather than to a fair trial before a neutral judge appointed in accordance with Article III of the Constitution with the procedural protections of a federal court, the FTC has also violated Black Knight's Equal Protection rights.

43.     The FTC's actions separately violate Black Knight's constitutional rights because the agency's structure, on its face, is unconstitutional under Article II.  In particular, the ALJ appointed by the FTC has an impermissible dual-layer of insulation from removal.  Because the agency's structure violates Article II, any actions taken against Black Knight under its present structure are invalid.

44.     Additionally, in this administrative proceeding, the FTC is adjudicating Black Knight's private rights.  Such an adjudication is improper and is the exclusive province of a court established by Article III of the Constitution.

45.     Moreover, the adjudication of Black Knight's substantial private rights in an action analogous to common law actions without a jury is unlawful under the Seventh Amendment to the Constitution.

46.     Moreover, by failing to provide a clear principle to the FTC and DOJ to determine which agency would investigate and prosecute a transaction under the antitrust laws, Congress unconstitutionally delegated its legislative power to the agencies, in violation of the nondelegation doctrine.  So too Congress's provision to the FTC the power to sue in federal or administrative court.

47.     The Commission's conduct has caused and will continue to cause Black Knight to suffer immediate and irreparable harm to its Constitutional rights.  No money damages can remedy this harm, and Black Knight has no legal avenue by which to recover any money damages against the Commission.  The FTC's administrative proceeding is not speculative.  It is happening and ongoing.  Further, the FTC's suit in this Court is in aid of this administrative proceeding.

48.     These violations of its constitutional rights entitle Black Knight to declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, as well as injunctive relief against the continuation of the FTC's administrative proceeding.

1

## **NOTICE OF CONTEMPLATED RELIEF**

2      WHEREFORE, Black Knight respectfully requests that the Court enter judgment:

3      A.      Denying the FTC's requested relief;

4      B.      Dismissing the Complaint in its entirety, with prejudice;

5      C.      Declaring the FTC's structure unconstitutional;

6      D.      Declaring the FTC's administrative procedures unconstitutional;

7      E.      Enjoining the FTC and its Commissioners from pursuing an administrative

8   enforcement action against Black Knight;

9      F.      Awarding Black Knight the costs it has incurred in defending this action and

10   expenses; and

11      G.      Awarding such other and further relief to Black Knight as the Court may deem just

12   and proper.

13   Dated:         April 25, 2023              Respectfully submitted,

14
                                      By:    _s/ R. James Slaughter_____
15
                                             Elliot R. Peters, Bar No. 158708
16                                           epeters@keker.com
                                             R. James Slaughter, Bar No. 192813
17                                           rslaughter@keker.com
                                             Khari J. Tillery, Bar. No. 215669
18                                           ktillery@keker.com
                                             **KEKER, VAN NEST & PETERS LLP**
19                                           633 Battery Street
                                             San Francisco, CA  94111-1809
20                                           Telephone:  (415) 391-5400
                                             Facsimile:  (415) 397-7188
21
                                             Jonathan M. Moses (admitted *pro hac vice*)
22                                           jmmoses@wlrk.com
                                             Adam L. Goodman (admitted *pro hac vice*)
23                                           algoodman@wlrk.com
                                             **WACHTELL, LIPTON, ROSEN & KATZ**
24                                           51 West 52nd Street
                                             New York, NY  10019
25                                           Telephone:  (212) 403-1000
                                             Facsimile:  (212) 403-2000
26
                                             *Attorneys for Defendant Black Knight, Inc.*
27

28