| | |
|---|---|
| Kalpana Srinivasan, Bar No. 237460<br>ksrinivasan@susmangodfrey.com<br>Michael Gervais, Bar No. 330731<br>mgervais@susmangodfrey.com<br>**SUSMAN GODFREY L.L.P.**<br>1900 Avenue of the Stars, Suite 1400<br>Los Angeles, California 90067-6029<br>Telephone: (310) 789-3100<br>Facsimile: (310) 789-3150<br><br>Shawn L. Raymond, *pro hac vice*<br>sraymond@susmangodfrey.com<br>Alexander L. Kaplan, *pro hac vice*<br>akaplan@susmangodfrey.com<br>**SUSMAN GODFREY L.L.P.**<br>1000 Louisiana, Suite 5100<br>Houston, Texas 77002-5096<br>Telephone: (713) 651-9366<br>Facsimile: (713) 654-6666<br><br>J. Clayton Everett Jr., *pro hac vice*<br>clay.everett@morganlewis.com<br>Ryan M. Kantor, *pro hac vice*<br>ryan.kantor@morganlewis.com<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>1111 Pennsylvania Avenue, NW<br>Washington, D.C. 20004-2541<br>Telephone: (202) 739-3000<br>Facsimile: (202) 739-3001<br><br>*Attorneys for Defendant*<br>*Intercontinental Exchange, Inc.* | Elliot R. Peters, Bar No. 158708<br>epeters@keker.com<br>R. James Slaughter, Bar No. 192813<br>rslaughter@keker.com<br>Khari J. Tillery, Bar No. 215669<br>ktillery@keker.com<br>**KEKER, VAN NEST & PETERS LLP**<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone: (415) 391-5400<br>Facsimile: (415) 397-7188<br><br>Jonathan M. Moses, *pro hac vice*<br>jmmoses@wlrk.com<br>Adam L. Goodman, *pro hac vice*<br>algoodman@wlrk.com<br>**WACHTELL, LIPTON, ROSEN & KATZ**<br>51 West 52nd Street<br>New York, NY 10019<br>Telephone: (212) 403-1000<br>Facsimile: (212) 403-2000<br><br>*Attorneys for Defendant*<br>*Black Knight, Inc.* |

(Additional counsel appear on signature page)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>INTERCONTINENTAL EXCHANGE, INC. and BLACK KNIGHT, INC.,<br><br>Defendants. | Case No. 3:23-cv-01710-AMO<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF MICHAEL L. KATZ** |

## MEMORANDUM OF POINTS AND AUTHORITIES

Dr. Michael L. Katz is a professor of economics at the University of California, Berkeley and former head of the Department of Justice, Antitrust Division's economics bureau. Defendants retained him to analyze and opine on several issues related to ICE's purchase of Black Knight. Dr. Katz drafted an initial expert report (DX219), a rebuttal report (DX421)[1] responding to Plaintiff FTC's expert Dr. Sacher's initial report, and a declaration summarizing those reports as his direct testimony for the Court (DX669). Dr. Katz opines that:

- The benefits of ICE's planned integration of MSP with Encompass and other mortgage technology products will flow through to lenders and homeowners originating mortgages (the "pass-through" opinion);

- The benefits of the integration will not timely be realized absent the transaction (the "merger-specificity" opinion);

- Dr. Sacher's pricing pressure analysis is flawed and does not account for or match important real-world features;

- When accounting for the actual facts of the proposed transaction, a realistic pricing pressure analysis demonstrates that the proposed transaction will generate downward pricing pressure (which indicates that the transaction is procompetitive); and

- Dr. Sacher's concentration analysis and merger simulation are unreliable because they fail to capture or are inconsistent with important features of the mortgage industry and the proposed transaction.

The FTC does not challenge the majority of these opinions. Instead, the FTC's motion to exclude focuses on just two of Dr. Katz's opinions: (1) the pass-through opinion; and (2) the merger-specificity opinion. Specifically, the FTC argues (incorrectly) that Dr. Katz's opinions (a) are "irrelevant" because they relate to Black Knight's servicing platform, MSP, Pl's Mot. at 3-4; (b) do not apply "any methodology to identify, quantify, or verify the efficiencies" resulting from the acquisition and therefore do not satisfy Rule 702's reliability requirement, *id.* at 5-7; and (c) are "unreliable" for lack of supporting evidence, *id.* at 7-9.

Because *Daubert* motions are generally intended to "protect *juries* from being swayed by dubious scientific testimony," exclusion of expert testimony under *Daubert* is rarely appropriate

---

[1] The signature page, Tab 1, errata, and a revised back-up file for Dr. Katz's rebuttal report can be found at DX197, DX196, DX540, and DX663, respectively.

for bench trials because "there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *U.S. v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (emphasis in original); *see also, e.g.*, *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) ("[T]here is less danger that a trial court will be unduly impressed by the expert's testimony or opinion."). This is not one of the rare instances where a *Daubert* motion should be granted in a bench trial.

The FTC's motion is based on a series of false premises. ***First***, its argument that Dr. Katz's opinions are "irrelevant" because they relate to MSP, a servicing platform, fundamentally misconstrues and misunderstands Dr. Katz's opinions. Although the benefits on which Dr. Katz focuses arise from integrating MSP with Encompass and other mortgage technology products, the customers benefitting from that integration—*i.e.*, the customers that are the subject of Dr. Katz's "pass-through" opinion—include the lenders, and ultimately the homeowners, originating mortgages. Those are the same customers, and same transactions, that the FTC claims will be harmed in two alternative "LOS markets." In addition, the FTC's irrelevance argument is predicated on the false premise that the *only* potential relevance of Dr. Katz's pass-through and merger-specificity opinions is to support a formal "efficiencies defense"; but the case law is clear that testimony similar to that offered by Dr. Katz may be relevant to assessing the competitive effects of the proposed transaction even if no formal efficiencies defense applies or could be supported.

***Second***, the FTC's arguments that Dr. Katz's pass-through and merger-specificity opinions are unreliable for lack of methodology ignore the nature of Dr. Katz's opinions, the specific expertise that he brings to those opinions, and much of the evidence on which he relies. Dr. Katz does not provide a methodology to "quantify" the benefits of the transaction because his opinions that the benefits will be passed-through and are merger-specific do not depend on quantification; and economic experts frequently and appropriately rely on the methodology Dr. Katz employs— assessment of incentives and underlying market dynamics—for those opinions.

***Third***, the FTC's argument that Dr. Katz's opinions are unreliable for lack of evidence because they improperly rely on statements from emails and interviews of party employees ignores

2    Case No. 3:23-cv-01710-AMO
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE DR. KATZ

the substantial additional evidence on which Dr. Katz relies for his opinions, including Defendants' ordinary course documents and data; that experts are permitted to rely on facts that are either not admissible or not admitted at trial; and that exactly this form of evidence—statements of the parties provided in interviews or otherwise—may be relied upon by experts. Significantly, the FTC points to no evidence that contradicts the information from the parties that the FTC labels "self-serving"—all of which relates to the parties' plans for the assets—nor do they even argue that such information is wrong.

Dr. Katz's "efficiencies"-related opinions are limited, but they are both relevant and reliable. They should be considered by the Court in assessing the likely effects of the transaction on competition, and the Court can decide for itself, as the finder of fact in this proceeding, what weight to accord those opinions.

**I.   LEGAL STANDARD**

Pursuant to Federal Rule of Evidence 702, expert testimony is admissible if (1) the testimony "'assist[s] the trier of fact' either 'to understand the evidence' or 'to determine a fact in issue'"; and (2) the expert is "sufficiently qualified to render the opinion." *Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010) (quoting Fed. R. Evid. 702); *accord Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). "In sum, the trial court must assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Primiano*, 598 F.3d at 564. The test of reliability is "flexible" and the district court "has discretion to decide how to test an expert's reliability as well as whether the testimony, is reliable based on 'the particular circumstances of the particular case.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 150). Even "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*

When assessing a *Daubert* motion to exclude the testimony of an expert witness, "the district judge is 'a gatekeeper, not a fact finder.'" *Id.* at 565 (quoting *U.S. v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)). Significantly, the main purpose of the Court's role as a gatekeeper for *Daubert* inquiries is to "protect *juries* from being swayed by dubious scientific testimony." *Flores*, 901 F.3d at 1165 (emphasis in original). "When the district court sits as the

finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for [itself]." *Id.* Therefore, exclusion of expert testimony under *Daubert* is rarely appropriate for bench trials because "there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion." *BurnLounge*, 753 F.3d at 888; *accord FTC v. Qualcomm Inc.*, No. 17-220, 2018 WL 6615050, at *2 (N.D. Cal. Dec. 17, 2018) ("[I]t is well established that the Court's gatekeeping duty is 'less pressing' regarding a bench trial.").

## II. ARGUMENT

### A. Dr. Katz's Testimony and Opinions Are Relevant

The FTC's relevance challenge depends on three false premises: (1) Dr. Katz's opinions do not relate to the products and consumers that the FTC claims would be harmed by the transaction (the "relevant market" premise); (2) because of the relevant market premise, Dr. Katz's opinions would not suffice to satisfy the requirements for a "merger efficiency defense" (the "efficiency defense" premise); and (3) because of the efficiency defense premise, Dr. Katz's pass-through and merger-specificity opinions are irrelevant (the "irrelevance premise"). Each of those premises is false as a matter of either fact or law. Dr. Katz's opinions regarding pass-through and merger-specificity are relevant and should be considered.

First, Dr. Katz's opinions about pass-through and merger-specificity clearly state that the benefits generated by ICE's plans for MSP will accrue to lenders originating loans—*i.e.*, the customers participating in the different LOS markets the FTC alleges—and will be passed-through to benefit homeowners:

- "Realization of Intercontinental Exchange's plans for MSP would generate substantial benefits for mortgage *originators*, . . . *borrowers* . . . ." DX219, Katz Rep. ¶ 11 (emphases added). Mortgage originators and borrowers are the same customers and end-consumers of LOS that would be impacted by the FTC's alleged anticompetitive effects.

- ICE's plans for MSP will "facilitate improved information exchange and deeper integration of MSP with other products, including *Encompass*," *Id.* ¶ 33 (emphasis added). Encompass is an LOS.

- ICE's plans for MSP "can be expected . . . to lower the costs of mortgage *origination*, and . . . to create and offer innovative new products and services . . . across both *origination* and servicing. These changes will ultimately benefit

> households because . . . lower *origination* costs for lenders will translate into lower fees for homebuyers." *Id.* ¶ 34 (emphases added).

- ICE's plans for MSP "will facilitate deeper integration of third-party products with Intercontinental Exchange's products," and the "increased harmonization and integration among *LOSs*, LSPs, and ancillary services will reduce lenders' costs of *originating* mortgages." *Id.* ¶¶ 39, 43 (emphasis added).

Thus, the FTC's repeated assertions that Dr. Katz does not discuss any benefits in the relevant markets are facially incorrect. The FTC appears to base its argument solely on the fact that MSP is a servicing product, *see* Pl. Mot. at 4 ("Because MSP, as a servicing platform, is not included in any of the relevant product markets, the alleged MSP-centered benefits examined by Dr. Katz occur outside of the relevant product markets."), but that misses the point. The FTC cites no case law—because there is none—suggesting that "in-market" efficiencies must arise solely from "in market" complementarities. The FTC's "relevant market" premise fails, and its argument that Dr. Katz's opinions are irrelevant fails with it.

Second, although the case law and guidelines on the "efficiencies defense" refer to "markets," it is clear that the focus of those opinions and guidance is on effects on consumers in those markets. Dr. Katz's testimony makes it clear that the efficiencies will benefit the customers and end-consumers in the alleged relevant markets, including lenders and homeowners who rely on or use the products within the two alleged LOS markets. This is distinguishable from *U.S. v. Phila. Nat'l Bank*, cited extensively by the FTC, where the efficiencies did not result in benefits to the customers in the relevant markets. 374 U.S. 321, 370-71 (1963) (finding that the claimed efficiency—an increased lending limit that would allow the combined bank to compete for very large loans—would not benefit customers in the relevant market as there was no lack of adequate banking facilities in the community). In fact, the FTC's own merger guidelines state that the agencies will consider whether efficiencies would reverse harm to "customers in the relevant market." DX411, U.S. Dep't of Justice & Fed. Trade Comm'n, *Horizontal Merger Guidelines* § 10 (2010). Dr. Katz's opinions on efficiencies are relevant to rebut any presumption of anticompetitive effects in the alleged markets and should be admissible. *See FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1054 (8th Cir. 1999); *see also New York v. Deutsche Telekom AG*,

439 F. Supp. 3d 179, 207 (S.D.N.Y. 2020); *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 151 (D.D.C. 2004).

Finally, the FTC is wrong that the only potential relevance of Dr. Katz's opinions regarding pass through and merger specificity is to support a formal "merger efficiencies" defense. "[E]vidence of efficiencies may rebut the presumption that a merger's effects will be anticompetitive, even if such evidence could not be used as a defense to an actually anticompetitive merger." *Deutsche Telekom AG*, 439 F. Supp. 3d at 207; *see also Tenet*, 186 F.3d at 1054-55; *Arch Coal*, 329 F. Supp. 2d at 151. Contrary to the FTC's assertion, this includes out-of-market efficiencies. *See Tenet*, 186 F.3d at 1054. In *Tenet*, although the relevant product market was limited to primary and secondary inpatient hospital services (*id.* at 1048), the Eighth Circuit evaluated evidence of efficiencies related to improved *tertiary* care offerings from the combined entity. *Id.* at 1054-55 ("The merged entity will be able to attract more highly qualified physicians and specialists and to offer integrated delivery and some tertiary care.").

### B. Dr. Katz Employs Rigorous and Typical Economic Methodologies

The FTC claims that Dr. Katz's opinions should be excluded because he purportedly "does not apply any methodology to identify, quantify, or verify the efficiencies that he asserts will result from the Acquisition." Pl. Mot. at 2. The FTC is wrong, and its unreliability challenge is based on a fundamental misunderstanding of Dr. Katz's opinions.

First, Dr. Katz's opinions that the benefits of integrating MSP with other mortgage technologies will flow through to lenders and homeowners originating mortgages (the "pass-through" opinion) does not depend on quantification of efficiencies; nor does his "merger-specificity" opinion. *Cf.* DX219, Katz Rep. ¶ 11 (opining that the transaction would "generate substantial benefits for *mortgage originators, servicing companies, borrowers, and other industry participants*"; ICE's plans for MSP will "generate greater user benefits than would realization of Black Knight's plans"; and ICE as a standalone company "would be very unlikely to offer a loan servicing platform") (emphasis added). Ultimately, the FTC's argument is that Dr. Katz has not provided a method to "quantify" the benefits at issue here, but Dr. Katz offers no opinions about quantification, nor does he need to. The FTC points to nothing to suggest that an expert's opinions

must be excluded because they do not include opinions about quantification.

Second, Dr. Katz's pass-through opinions apply an appropriate economic methodology. Dr. Katz applies his extensive knowledge and expertise as a professional economist, leading academic in the field of industrial organization, and former head of economics at two different federal agencies charged with assessing competitive effects of mergers (the DOJ's Antitrust Division and the Federal Communications Commission), to assess the incentives of parties in the competitive ecosystem and what economic theory, and experience, suggest will happen in light of those incentives. *See, e.g.*, DX219, Katz Rep. ¶ 38 ("Although the increase in the benefits generated by [ICE's plans for MSP] could create economic incentives to charge prices higher than those that would be charged if the services offered lower benefits, economic theory indicates that any such price increases would be less than the increases in benefits, so that users would be better off on net."); *id.* ¶ 39 ("[T]he improved harmonization and integration of MSP with Encompass and other Intercontinental Exchange products will create competitive pressures for the suppliers of rival products to offer their customers greater value."); *id.* ¶ 43 (ICE's plans for MSP "will effectively lower the *marginal* costs of originating and servicing mortgages," which "will, in turn, create incentives for lenders and mortgage services to expand output by lowering prices and/or raising product and service qualities" (emphasis in original)). That is exactly what economists do, that is the methodology they typically employ, and it is an appropriate basis for expert economic opinions.

Third, Dr. Katz took steps, which are outlined in his report, to verify that the efficiencies claimed here are merger specific. He relied on the Defendants, both in interviews and by reviewing Defendants' ordinary course documents, to explain what their plans were, and were not, in relation to integrating MSP with other mortgage technology products, including with LOSs such as Encompass. DX219, Katz Rep. ¶¶ 33, 37, 40, 50-52. Those are the parties' plans; the FTC points to no evidence to suggest that Dr. Katz's understanding of those plans is incorrect; and the nature of those plans (*i.e.*, ICE's plans to create a "life of loan" platform for mortgages) are public, repeatedly touted by management of the Company to the public, and part of the Company's playbook in various other markets. In addition, Dr. Katz reviewed evidence of what ICE did in

7                                    Case No. 3:23-cv-01710-AMO
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE DR. KATZ

other markets, and how it accomplished efficiencies following other transactions, in verifying those efficiencies. DX219, Katz Rep. ¶ 54; *see also Deutsche Telekom*, 439 F. Supp. 3d at 216-17 (finding that Sprint and T-Mobile's claimed merger efficiencies were verifiable "in significant part" because of T-Mobile's success in a prior, similar merger). Finally, Dr. Katz reviewed evidence of ICE's consideration of other potential servicing assets and the nature of the markets for servicing at issue in assessing the likelihood that ICE would be likely to achieve the same results in the near term absent the transaction. DX219, Katz Rep. ¶¶ 53-59.

### C. Dr. Katz's Testimony and Opinions Are Well Supported

The FTC's reliability challenge based on an alleged absence of evidentiary support does not meet the legal standard to exclude expert testimony under Federal Rule of Evidence 702. The FTC makes three arguments about the evidence on which Dr. Katz relies. None has merit.

First, the FTC argues that Dr. Katz's reliance (in portions of his report) on purportedly "self-serving" interviews, emails, and expected testimony of Defendants' employees renders his opinions unreliable. Pl. Mot. at 7-9. The FTC ignores the "substantial factual record," *id.* at 7, that Dr. Katz does cite in support of his expert opinions on efficiencies, which includes the following: the deposition of Jeff Sprecher, Chair and Chief Executive Officer of ICE; the deposition of Eric Connors, the former Chief Operating Officer of ICE Mortgage Technology; publicly available sources such as S&P Global Ratings and NYSE Data Insights; several ordinary course business documents in the record from Black Knight dating back to 2020; several ordinary course business documents in the record from ICE dating back to 2021; and Black Knight's responses to the FTC's Second Request—*none* of which the FTC objects to. *See* DX219, Katz Rep. ¶¶ 33-60.

Second, the FTC's complaint that Dr. Katz refers to his understanding that ICE employees will testify at trial to certain facts, Pl. Mot. at 7-8, goes to the weight of Dr. Katz's testimony, not its admissibility. Dr. Katz references his understanding that ICE employees will testify to two facts at trial: (1) that ICE intends to allow third-party LOSs, LSPs, and ancillary services to utilize the platform interfaces that ICE plans to develop as part of integrating its own products; and (2) that having a unified storage and processing system will offer a variety of benefits. DX219, Katz

Rep. ¶¶ 36-37. Both facts are supported abundantly throughout the record, including in submissions made by ICE to the FTC and sworn deposition testimony in the record. The FTC makes no assertions in its motion that these two facts are not supported by other evidence in record. That Dr. Katz chose to reference his understanding that live witnesses will speak to these facts at trial as opposed to a document or deposition is not a basis to exclude his opinions, but rather is a consideration for the fact finder to decide how much weight to give that testimony. *See FTC v. Qualcomm Inc.*, No. 17-220, 2018 WL 6460573, at *2 (N.D. Cal. Dec. 10, 2018) (expert opinion "permissibly rel[ied] upon the statements of other fact witnesses"; party seeking exclusion instead "may cross-examine [the expert] at trial" about his interpretations of witness statements).

Third, the FTC's argument that it is somehow improper for Dr. Katz to rely in part on interviews of with ICE executives and certain e-mails involving Defendants' executives fails as a matter of law. Pl. Mot. at 8-9. It is black-letter law that experts may rely on facts not in evidence and even inadmissible evidence, including interviews of party employees. *See generally* Fed. R. Evid. 703 (experts may rely on facts not in evidence); *see also Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*, No. 21-6536, 2023 WL 4108838, at *15 (N.D. Cal. June 21, 2023) ("Under FRE 703, an expert may use [or] offer otherwise inadmissible evidence to explain the basis of his opinion . . . ."); *id.* at *6 (denying motion to exclude expert testimony where expert relied on "interviews with [defendants'] personnel"); *Qualcomm*, 2018 WL 6460573, at *2 (expert witness may rely "upon the statements of other fact witnesses to arrive at his conclusions," even if the expert "lacks first-hand knowledge" or if the information "might not be admissible in evidence").

The interviews and e-mails involve Defendants' future plans for MSP, and particularly ICE planning to create a common infrastructure for MSP that will allow deeper harmonization and integration with Encompass and other mortgage technology products. The executives interviewed and involved in the e-mails are knowledgeable about and responsible for those topics; and the FTC does not suggest otherwise. Nor does the FTC argue that any of the facts on which Dr. Katz relied are wrong or incorrect, and the FTC points to no contradictory evidence. In fact, the FTC's expert, Dr. Sacher, also relies on various self-serving declarations solicited by the FTC of witnesses who,

by agreement of the parties, were never deposed and will not testify in this matter. *See, e.g.*, PX8000, Sacher Rep. ¶¶ 95, 113, 118, 558-61, 564, 572, 605 (citing Decl. of Mike Yu, CEO, Vesta Innovations). This is not a case—unlike many of cases cited by the FTC in its motion[2]—where an assumption underlying the expert's opinion was demonstrably wrong or false.

The FTC's reliance on *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3505003 (N.D. Cal. June 2, 2015), is misplaced. There, the court *denied* the *Daubert* motion, rejecting the argument that the expert relied "merely on the self-serving projections of his client." *Id.* at *3; *see also id.* at *2 ("There is a fine line between a court finding that proffered expert testimony is 'unpersuasive' (and capable of being submitted to a jury) and when a court concludes that evidence is wholly 'unreliable' (and properly excludable under Daubert)."). The FTC raises the same challenge here, and it should be rejected for the same reason. As in *Clear View*, Dr. Katz "did not rest his valuation on [Defendants'] mere 'say-so,' but rather engaged in his own independent analysis of this data, consistent with his obligations as an expert under Rule 702 and *Daubert*." *Id.* at *3.

The FTC's motion to exclude Dr. Katz's opinions for lack of evidence should be rejected, especially in light of the "relaxed" *Daubert* standard for bench trials applicable here, where "there is less danger that a trial court will be unduly impressed by the expert's testimony or opinion." *Flores*, 901 F.3d at 1165.

## III. CONCLUSION

For the reasons stated herein, Plaintiff's Motion *in limine* to exclude testimony of Dr. Katz should be denied.

---

[2] *See Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001) (excluding expert opinion because there was "no factual basis" for the assumptions underlying the opinion); *Volterra Semiconductor Corp. v. Primarion, Inc.*, 799 F. Supp. 2d 1092, 1098-99 (N.D. Cal. 2011) (granting judgment as a matter of law when expert contradicted his own prior testimony and offered conclusory testimony unsupported by the facts).

| | | |
|---|---|---|
| Dated: July 6, 2023 | | MORGAN, LEWIS & BOCKIUS LLP |
| | By: | */s/ Minna Lo Naranjo* |
| | | Minna Lo Naranjo |

Kalpana Srinivasan, Bar No. 237460
ksrinivasan@susmangodfrey.com
Michael Gervais, Bar No. 330731
mgervais@susmangodfrey.com
Jesse-Justin Cuevas, Bar No. 307611
jcuevas@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Shawn L. Raymond, *pro hac vice*
sraymond@susmangodfrey.com
Alexander L. Kaplan, *pro hac vice*
akaplan@susmangodfrey.com
Adam Carlis, *pro hac vice*
acarlis@susmangodfrey.com
Michael C. Kelso, *pro hac vice*
mkelso@susmangodfrey.com
Abigail Noebels, *pro hac vice*
anoebels@susmangodfrey.com
Alejandra C. Salinas, *pro hac vice forthcoming*
asalinas@susmangodfrey.com
Krisina Zuñiga, *pro hac vice*
kzuniga@susmangodfrey.com
**SUSMAN GODFREY L.L.P.**
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

J. Clayton Everett Jr., *pro hac vice*
clay.everett@morganlewis.com
Ryan M. Kantor, *pro hac vice*
ryan.kantor@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541

Telephone: (202) 739-3000
Facsimile: (202) 739-3001

John C. Dodds, *pro hac vice*
john.dodds@morganlewis.com
Zachary M. Johns, *pro hac vice*
zachary.johns@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Facsimile: (212) 309-6001

Harry T. Robins, *pro hac vice*
harry.robins@morganlewis.com
Susan Zhu, *pro hac vice*
susan.zhu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Attorneys for Defendant
Intercontinental Exchange, Inc.*

and

Elliot R. Peters, Bar No. 158708
epeters@keker.com
R. James Slaughter, Bar No. 192813
rslaughter@keker.com
Khari J. Tillery, Bar No. 215669
ktillery@keker.com
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Jonathan M. Moses, *pro hac vice*
jmmoses@wlrk.com
Adam L. Goodman, *pro hac vice*
algoodman@wlrk.com
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

*Attorneys for Defendant
Black Knight, Inc.*

**Local Rule 5-1(h)(3) Attestation**

Pursuant to N.D. Cal. Local Rule 5-1(h)(3), the undersigned attests that each of the other signatories to this document have concurred in the filing of this document.

Dated: July 6, 2023   By:   */s/ Minna Lo Naranjo*

Minna Lo Naranjo
MORGAN, LEWIS & BOCKIUS LLP

*Attorney for Defendant
Intercontinental Exchange, Inc.*

**Proof of Service**

I, Minna Lo Naranjo, hereby certify that on July 6, 2023, I electronically filed the document entitled **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF MICHAEL L. KATZ** with the Clerk of the Court for the United States District Court for the Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

Dated:  July 6, 2023   By:   */s/ Minna Lo Naranjo*

Minna Lo Naranjo
MORGAN, LEWIS & BOCKIUS LLP

*Attorney for Defendant
Intercontinental Exchange, Inc.*